**Jay Dee COX, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 91–186.

Supreme Court of Wyoming.

April 24, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Mel Orchard, III, Student Intern for Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Jay Dee Cox appeals from his conviction for aggravated assault.

We affirm.

Appellant sets forth the following issues on appeal:

I. Whether the failure to properly instruct the jury as to the requirement of the State to show the specific intent of the accused deprived him of his constitutional right to a fair trial and was a clear misinterpretation of the law?

II. Whether the failure to properly instruct the jury that intoxication is a defense to a specific intent crime deprived the accused of his constitutional right to a fair trial and was reversible error?

III. Whether the errors alleged in the previous argument should be decided on the merits by this court (not avoided by resort to some procedural default) under one of three theories: (1) the error was preserved; (2) the doctrine of plain error; or (3) ineffectiveness of counsel?

Appellant spent the early afternoon hours of April 29, 1990, at home drinking whiskey with a friend. Later in the afternoon, another friend, Pat Feist, joined the pair, contributing some beer and a marijuana cigarette to the party. The three friends smoked the marijuana cigarette and drank Feist's beer. Later, Feist purchased more beer, which the three men consumed on into the evening.

As the party progressed, Appellant showed his new lever action .22 calibre rifle to Feist. The two men took turns firing the rifle out the back door of Appellant's residence at various times during the evening. Several of Appellant's neighbors called the police to report hearing shots being fired. Officers Meyers and Tos responded to the call and, after determining the source of the shots, radioed in a request for assistance. Lieutenant McMahon responded and placed several officers around Appellant's house to create a perimeter which would keep the public away and secure the area.

Lieutenant McMahon first had the police dispatcher search for a telephone number for Appellant's address. After the dispatcher was unable to locate a telephone number, Lieutenant McMahon and Officer Meyers knocked on the door. Appellant opened the door and stepped out onto the porch, still carrying a hunting knife which

he had been sharpening. Appellant asked Officer Meyers what he was doing there and then advanced toward him brandishing the knife. As Appellant advanced, slashing back and forth with the knife, Officer Meyers retreated with his gun drawn, repeatedly ordering Appellant to drop the knife. As Officer Meyers retreated, he stumbled and almost fell over backwards. At this point, the knife was very close, and Officer Meyers began his trigger pull, but he abandoned it at the last second in fear that the bullet would hit an officer standing behind Appellant. As Appellant approached again, Officer Meyers struck him in the face with his flashlight. A short time later, Appellant slammed the knife down on one of the police cars.

Appellant was charged with aggravated assault in violation of Wyo.Stat. § 6–2–502(a)(iii) (1988). A jury found Appellant guilty, and the district court sentenced him to not less than two years nor more than five years in the Wyoming State Penitentiary, with credit being given for time served. The district court suspended the sentence in favor of probation.

■ Although Appellant raises three issues on appeal, the dispositive question is whether aggravated assault as defined by § 6–2–502(a)(iii) is a specific intent crime. On several earlier occasions, we held that aggravated assault with a dangerous weapon was a general intent crime. *Simmons v. State*, 674 P.2d 1294, 1297 (Wyo.1984); *Carfield v. State*, 649 P.2d 865, 869 (Wyo. 1982). However, these previous cases were decided on the basis of a prior aggravated assault statute. Therefore, we must decide if aggravated assault under the current statute is a specific intent crime. In *Dean v. State*, 668 P.2d 639 (Wyo.1983), we explained the difference between a specific intent crime and a general intent crime:

" 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence' the fact that the defendant intended to do the proscribed act makes that crime a general criminal intent offense. 'When the definition refers to defendant's intent

to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " *People v. Love*, 111 Cal.App.3d Supp. 1, 168 Cal.Rptr. 591, 600 (1980).

"A specific intent crime is one in which a particular intent is a necessary element of the crime itself." *Russell v. State*, Fla.App., 373 So.2d 97, 98 (1979).

668 P.2d at 642 (emphasis omitted). *See also Crozier v. State*, 723 P.2d 42 (Wyo. 1986), and *Dorador v. State*, 573 P.2d 839 (Wyo.1978).

■ Pursuant to the test set forth in *Dean*, only those crimes which refer to an intent to do a further act or achieve a future consequence are specific intent crimes. Examples of an intent to commit a further act include Wyoming's burglary statute, which states that a person is guilty if, "without authority, he enters or remains in a building ... *with intent to commit larceny or a felony therein.*" Wyo.Stat. § 6–3–301(a) (1988) (emphasis added). *See also Jennings v. State*, 806 P.2d 1299 (Wyo.1991). Similarly, Wyo.Stat. § 35–7–1031(a) (1988) makes it unlawful to possess a controlled substance *"with intent to manufacture or deliver."* (Emphasis added.) *Dorador*, 573 P.2d 839.

In contrast, § 6–2–502(a)(iii) provides:

(a) A person is guilty of aggravated assault and battery if he:

. . . .

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; ...

The statute proscribes threatening to use a deadly weapon. The statute contains no reference to an intent to commit a further act or achieve a future consequence, nor does it make a particular intent a part of the crime itself. Thus, according to our definition in *Dean*, aggravated assault under § 6–2–502(a)(iii) is not a specific intent crime.

■ Rather than describing a specific intent crime, § 6–2–502(a)(iii) conforms to our definition of a general intent crime; i.e., a statute which simply describes a particular

act, without reference to intent to do a further act or achieve a future consequence. The language, "[t]hreatens to use," merely describes what a defendant must do with a drawn deadly weapon to be guilty of aggravated assault. *See Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987) ("threatens to use" requires an actual threat of physical injury during the act of employing a deadly weapon). As a general intent crime, aggravated assault requires only that intent which may be inferred from doing the act which constitutes the offense charged; i.e., slashing back and forth with the hunting knife. *Carfield*, 649 P.2d at 869; *Sanchez v. State*, 567 P.2d 270, 279 (Wyo.1977).

Having determined that § 6–2–502(a)(iii) defines a general intent crime, we must consider Appellant's arguments. Appellant claims that the lower court erred by failing to instruct the jury on the State's burden to prove that he had the requisite specific intent. Appellant's claim that § 6–2–502(a)(iii) requires specific intent stems from our holding in *Johnston*, where we said that "[t]hreatens to use" requires proof of an *actual threat* of physical injury. Appellant appears to interpret our use of the term "actual threat" to mean that a defendant must have specific intent. Appellant fails to explain how an actual threat translates into a requirement of specific intent. Appellant does point out that the term "actual threat," as opposed to the term "constructive threat," requires that the alleged threat be measured by the defendant's conduct and not by the victim's reaction. However, this does not explain why an actual threat requires specific intent. In our view, rather than mandating a specific intent, the term "actual threat" merely describes the proscribed conduct.

 Appellant next argues that the court deprived him of his constitutional right to a fair trial because it failed to instruct the jury that intoxication is a defense to a specific intent crime. We agree

that, when the crime charged "rests in intention," a defendant is entitled to have the jury instructed that voluntary intoxication may be considered to negate the requisite specific intent. *Brown v. State*, 590 P.2d 1312, 1316 (Wyo.1979); *Goodman v. State*, 573 P.2d 400, 406 (Wyo.1977), *after remand*, 601 P.2d 178 (Wyo.1979); Wyo.Stat. § 6–1–202(a) (1988). However, in a case such as this which involves a general intent crime, voluntary intoxication is not a defense. *Crozier*, 723 P.2d at 51; *Carfield*, 649 P.2d at 869. Since voluntary intoxication is not a defense, the requested instruction was inapplicable, and the court had no duty to instruct the jury on an inapplicable statement of law. *Miller v. State*, 755 P.2d 855, 864 (Wyo.1988).

Finally, Appellant urges us to consider on its "merits" his claim that the lower court failed to properly instruct the jury on an intoxication defense and to not dispose of the argument by some "procedural default." Appellant maintains that this court should consider his claims on the basis of one of three theories: (1) The error was preserved at the pretrial conference; (2) the failure to instruct the jury was plain error; or (3) defense counsel's failure to object to the lack of an intoxication instruction was ineffectiveness of counsel.

Appellant's concern that we should not dispose of his argument by some "procedural default" is not an issue. We considered his claim that the lower court should have instructed the jury on voluntary intoxication as a defense but found that the instruction was inapplicable because aggravated assault under § 6–2–502(a)(iii) is a general intent crime.

Affirmed.