FILED
**United States Court of Appeals
Tenth Circuit**

**April 15, 2025**

**Christopher M. Wolpert
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENT MATTHEW STAPP,

    Defendant - Appellant.

No. 24-7009
(D.C. No. 6:22-CR-00040-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EBEL**, and **MORITZ**, Circuit Judges.
_____

Kent Matthew Stapp appeals his sentence for being a felon in possession of a

firearm.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we

affirm.

## I.  BACKGROUND

### A.  *Prior Oklahoma Offenses*

In 2005, Mr. Stapp pled guilty to the Oklahoma state offenses of

second-degree burglary, grand larceny, and unauthorized use of a vehicle.  He

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

received a seven-year prison sentence for the second-degree burglary and five-year sentences for the two remaining counts, to be served concurrently. In 2008, Mr. Stapp pled guilty to Oklahoma aggravated assault and battery and received a two-year sentence, to run concurrently with his 2005 sentences.

### B. *Factual History*[1]

On February 10, 2022, Mr. Stapp was a guest at a motel in Okmulgee, Oklahoma. That evening, he rode in a car with his brother, Damien, and sister-in-law, Ravine, to a nearby casino.[2] Early the next morning, while Damien and Ravine remained at the casino, Mr. Stapp drove away with the car. Sometime later, Ravine reported the car stolen to Muscogee (Creek) Nation Lighthorse Police.

Okmulgee County Sheriff's Deputy Benjamin Ruppert observed Mr. Stapp driving and stopped him for improper display of a vehicle tag. After discovering Mr. Stapp had active Oklahoma arrest warrants, Deputy Ruppert ordered him to exit the vehicle. When Mr. Stapp refused, Deputy Ruppert, assisted by another officer, removed Mr. Stapp from the vehicle.

As Deputy Ruppert patted him down, Mr. Stapp resisted and fled. Deputy Ruppert gave chase and tackled Mr. Stapp. While on the ground, Mr. Stapp

---

[1] We draw this factual history from trial evidence and undisputed evidence from sentencing.

[2] The record does not provide Ravine's last name. For ease of reference, we refer to her as "Ravine." To avoid confusion, we also refer to Mr. Stapp's brother by his first name, "Damien," because his last name is also "Stapp."

resisted commands to show Deputy Ruppert his hands, reaching for his waistline or front pants pocket instead.  During the scuffle, Deputy Ruppert heard "a metallic sound" as an object "hit the ground."  ROA, Vol. III at 78.  After placing Mr. Stapp in handcuffs, the officers recovered a handgun from the ground near Mr. Stapp.

After Mr. Stapp's arrest, Ravine arrived.  Police body camera footage captured law enforcement asking her, "Did you give him permission to take the vehicle?"  *Id.* at 244-45.  She responded, "No, I gave him permission to sit in my car.  I didn't know he was going to take it."  *Id.* at 245.  She also stated she wished Mr. Stapp "would have told me he was going to take it."  *Id.*  She declined to press charges.

### C. *Procedural History*

In 2023, a jury convicted Mr. Stapp of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

### 1. **Presentence Investigation Report**

The United States Probation Office prepared a Presentence Investigation Report ("PSR") for Mr. Stapp's sentencing.

Mr. Stapp's PSR set his base offense level at 14.  It then applied a four-level enhancement under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") for "possess[ing] any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  It said the enhancement applied because Mr. Stapp was operating a vehicle that had been reported stolen when he was arrested.  This resulted in a total offense level of 18.

3

The PSR assessed 17 criminal history points, including three points each for his 2005 and 2008 convictions.  This score placed Mr. Stapp in criminal history category VI, which, combined with his offense level, yielded an advisory Guidelines range of 57 to 71 months in prison.

### 2. PSR Objections

In a letter to the Probation Office, Mr. Stapp objected to the PSR's four-level enhancement.  He argued the evidence described in the PSR did not prove that he committed automobile theft.  Without stating whether Damien owned the vehicle, Mr. Stapp proffered that he received the car keys and permission from Damien to drive the car back to his motel.  He did not object to the inclusion of his 2005 and 2008 convictions in his criminal history score.

The Government responded that Ravine's report to the police of a stolen vehicle together with the body camera footage of her later statement at the arrest scene sufficed to prove Mr. Stapp violated Okla. Stat. tit. 47, § 4-102, which makes it a felony to, "without the consent of the owner and with intent to deprive the owner, temporarily or otherwise, of the vehicle or its possession, [to] take[], use[] or drive[] the vehicle."  Okla. Stat. tit. 47, § 4-102.

### 3. Sentencing Motion

Mr. Stapp moved the district court to sustain his objection to the sentencing enhancement or vary his offense level to 14.  Mr. Stapp argued that he "thought he had permission to drive the vehicle" based on his proffer that he "asked and received the keys to the car from his brother for the purpose of running an errand."  ROA,

4

Vol. I at 109. He therefore contended the Government failed to prove "intent to deprive the owner of the vehicle." *Id.* at 108.

A reduction of the offense level to 14 would have resulted in a Guidelines range of 37 to 46 months. He asked for 37 months.

### 4. Sentencing

At the sentencing hearing, Mr. Stapp stipulated to the body camera footage and to Ravine's statement but reiterated his proffer that Damien permitted him to drive the car. He argued the conflicting evidence amounted to a "misunderstanding" between Mr. Stapp and his family. ROA, Vol. III at 241.

The Government argued that Ravine's statement sufficed to prove that Mr. Stapp "took the vehicle without the permission of the owner, albeit temporarily . . . . [which] is enough to satisfy this statute." *Id.* at 243. The Government played the body camera footage at the sentencing hearing but introduced no witness testimony.

The district court adopted the PSR's calculation of Mr. Stapp's Guidelines range, including the § 2K2.1(b)(6)(B) sentencing enhancement. It explained:

> Based on the evidence in this case, the owner of the vehicle reported it stolen to Creek Nation Lighthorse Police, and advised law enforcement that the Defendant was not given permission to drive the vehicle from the casino, but merely to sit in it. This resulted in the Defendant being in possession of a stolen vehicle, which meets the definition of "another felony offense."
>
> The Defendant's possession of the firearm had the potential to facilitate his possession of the stolen vehicle by emboldening him to maintain that possession if confronted by law

5

> enforcement or the rightful owner. The details of this case indicated that the Defendant did not obey the orders of law enforcement and appeared to have been reaching for the firearm during the attempted arrest . . . . Therefore, the Court does find by a preponderance of the evidence that the four-level enhancement pursuant to the Guideline Section 2K2.1(b)(6)(B) is applicable in this case, and the Defendant's objection is overruled.

*Id.* at 246. Hearing no other objections, the court adopted the PSR's Guidelines range of 57 to 71 months. It denied Mr. Stapp's motion for a downward variance and sentenced him to 60 months in prison.

## II. DISCUSSION

Mr. Stapp challenges the procedural reasonableness of both his offense level and his criminal history category. Aplt. Br. at 16-39. First, he argues the four-level enhancement under § 2K2.1(b)(6) was based on unreliable hearsay and otherwise lacked sufficient evidence. *Id.* at 16-28. Second, he contends his prior Oklahoma convictions should not count for his criminal history under U.S.S.G. § 4A1.1 because the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), rendered them void. *Id.* at 28-39.

### A. *Procedural Reasonableness and Standard of Review*

When reviewing a sentence for procedural reasonableness, we consider whether the district court committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *accord United States v. McCrary*, 43 F.4th 1239, 1244 (10th Cir. 2022). District courts calculate the range based on the defendant's offense

6

level and criminal history category.  *See* U.S.S.G. § 1B1.1.  Mr. Stapp claims the district court miscalculated both.

We review procedural reasonableness for abuse of discretion, which means "we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error."  *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012); *see Gall*, 552 U.S. at 51; *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).

"In particular, we review the application of § 2K2.1(b)(6)(B) in a given case for clear error."  *United States v. Leib*, 57 F.4th 1122, 1125-26 (10th Cir. 2023). "Thus, 'we will not disturb the district court's factual findings unless they have no basis in the record' and, in reviewing the record, 'we view the evidence and inferences therefrom in the light most favorable to the district court's determination.'"  *Id.* at 1126 (quoting *United States v. Hoyle*, 751 F.3d 1167, 1174 (10th Cir. 2014)).  "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge."  *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003) (quotations omitted).

We review a sentence's procedural reasonableness for plain error when the defendant did not object in the district court.  *See* Fed. R. Crim. P. 52(b); *United States v. Booker*, 543 U.S. 220, 268 (2005) (clarifying that ordinary prudential doctrines, such as the "'plain-error' test" apply to reasonableness challenges to sentences); *see also Leib*, 57 F.4th at 1128 (applying plain-error review to

defendant's hearsay argument not raised at sentencing).  The appellant must show

"(1) the district court erred; (2) the error was plain; (3) the error affects the

defendant's substantial rights; and (4) the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings."  *United States v. Warrington*,

78 F.4th 1158, 1167 (10th Cir. 2023) (quotations omitted).  "An error is plain if it is

clear or obvious under current, well-settled law."  *Id.* (quotations omitted).  "A law is

well-settled in the Tenth Circuit if there is precedent directly on point from the

Supreme Court or the Tenth Circuit, or if there is consensus in the other circuits."

*United States v. Egli*, 13 F.4th 1139, 1146 (10th Cir. 2021).

"When an appellant fails to preserve an issue and also fails to make a

plain-error argument on appeal, we ordinarily deem the issue waived (rather than

merely forfeited) and decline to review the issue at all—for plain error or otherwise."

*United States v. Bradley*, 97 F.4th 1214, 1221 (10th Cir. 2024) (quoting *United States

v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019)).

B. *Analysis*

1. **Offense Level Enhancement**

a. *Hearsay*

Mr. Stapp argues the district court erred when it relied on Ravine's statement

to police.  Aplt. Br. at 19-28.  For the first time on appeal, he contends the statement

is unreliable hearsay because it lacks the minimal indicia of reliability required for

evidence at sentencing.  *See id.*  We reject this argument because he fails to argue

plain error and it otherwise lacks merit.

###### i.  Legal background:  hearsay at sentencing

"Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, so long as it adheres to a preponderance of the evidence standard."  *United States v. Ruby*, 706 F.3d 1221, 1227 (10th Cir. 2013).

Hearsay statements are "presumptively unreliable" for trial purposes, *Idaho v. Wright*, 497 U.S. 805, 823 (1990), but "may be considered at sentencing if they bear 'some minimal indicia of reliability,'" which is a "low hurdle," *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995)).[3]  "Corroborating evidence is often key to determining whether a statement is sufficiently reliable."  *Ruby*, 706 F.3d at 1229.

###### ii.  Waiver and no error

Mr. Stapp contends Ravine's hearsay statement lacked the minimal indicia of reliability.[4]  He forfeited this argument by failing to raise it in district court. *See United States v. Garcia*, 936 F.3d 1128, 1131 (10th Cir. 2019).  "On appeal, we

---

[3] *See* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided . . . [it] has sufficient indicia of reliability to support its probable accuracy.").

[4] The parties agree that the body camera footage of Ravine's statement was hearsay evidence—that is, a statement that "the declarant does not make while testifying at the current trial or hearing" and offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c); *see Smith v. Arizona*, 602 U.S. 779, 785 (2024).

9

can only consider forfeited arguments under the plain error standard of review. But if a defendant does not argue for plain error in his opening brief on appeal, he waives any plain error argument." *Id.* (citation omitted); *Bradley*, 97 F.4th at 1221. Mr. Stapp has not argued plain error on appeal, so he has waived his hearsay argument.

Mr. Stapp has not otherwise demonstrated the district court erred in relying on the hearsay statement. The statement meets the "some minimal indicia of reliability" standard, *Cook*, 550 F.3d at 1296. Ravine's report to the police that the vehicle had been stolen before Mr. Stapp's traffic stop corroborates her later statement at the scene that she was the vehicle's owner and that Mr. Stapp did not have permission to take it. *See Ruby*, 706 F.3d at 1229. Her statement on body camera footage was presented at sentencing, which permitted the district court to observe her demeanor. *See Leib*, 57 F.4th at 1129 (reasoning the hearsay was reliable, in part, because an affiant officer "reviewed the body camera audio and video recording" of the statement).

Mr. Stapp argues that *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995), shows Ravine's statement cannot clear the "low hurdle" required of hearsay evidence at sentencing. In *Fennell*, the defendant's former girlfriend and victim of the alleged crime made unsworn allegations against the defendant in a telephone interview with the probation officer who prepared the PSR for the defendant's sentencing. *Id.* at 813. The district court relied solely on the probation officer's in-court testimony account of the girlfriend's hearsay statement to enhance the defendant's sentence. *Id.*

We held this statement lacked the minimal indicia of reliability to warrant its consideration at sentencing. *Id*. Unlike here, the interviewing officer in *Fennell* had no opportunity "to observe her demeanor during the interview and therefore could not form any opinion as to her veracity," and there was "no other evidence" in the record corroborating the officer's account. *Id.*

Ravine's hearsay statement more closely resembles the one in *United States v. Leib*. In *Leib*, we upheld a sentencing enhancement under § 2K2.1(b)(6)(B) based in part on a hearsay statement that the defendant's mother made to law enforcement officials. *Leib*, 57 F.4th at 1229. She told them the defendant had fired multiple shots into his bedroom floor. *Id.* at 1228. She declined to press charges and did not testify, but police captured her statement on body camera footage and presented it to the court at sentencing through an officer's affidavit. *Id.* at 1228-29. The court found the "totality of the circumstances" corroborated the mother's hearsay statement that her son intentionally fired shots into the floor, noting the defendant was alone, uninjured, and had fired multiple shots. *Id.* at 1127-28. We also emphasized that, unlike *Fennell*, the unsworn statement was captured in the body camera footage. *Id.* at 1129.

Ravine's hearsay statement was at least as reliable, if not more so, than the statement in *Leib*. As previously discussed, Ravine's earlier report to the police that the vehicle was stolen corroborated her statement, which was captured on body camera footage and was presented to the court. In contrast to *Fennell*, the record thus tends to "buttress" rather than "undermine" confidence in the hearsay statement,

11

*Fennell*, 65 F.3d at 813, which cleared the "low hurdle" required by the "some minimal indicia of reliability" standard, *Cook*, 550 F.3d at 1296.

    b. *Sufficiency*[5]

Mr. Stapp contends the district court clearly erred in finding Mr. Stapp committed another felony offense to warrant application of the § 2K2.1(b)(6)(B) sentence enhancement.  We disagree.

    i.  Legal background:  § 2K2.1(b)(6)

"The government has the burden of proving, by a preponderance of the evidence, that Section 2K2.1(b)(6) applies." *United States v. Kitchell*, 653 F.3d 1206, 1226 (10th Cir. 2011).  "The district court's factual finding as to whether the government met this burden 'is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence, is left with a definite and firm conviction that the district court erred.'" *United States v. Brown*, 85 F.4th 1291, 1295 (10th Cir. 2023) (quotations omitted) (reviewing sufficiency of evidence for a sentencing

---

[5] We are not convinced Mr. Stapp adequately raised his sufficiency-of-evidence argument in his opening brief because he only contested the reliability of the hearsay evidence.  *See United States v. Workman*, No. 23-7081, 2024 WL 4988279, at *3 n.4 (10th Cir. Dec. 5, 2024) (unpublished) ("Apart from contesting whether the hearsay evidence was sufficiently reliable, Mr. Workman does not separately challenge the district court's finding that a preponderance of the evidence supported the sentencing enhancement.").  But we exercise our discretion to consider it.  *See United States v. Jani*, No. 23-1309, 2025 WL 548404, at *3 (10th Cir. Feb. 19, 2025) ("Generally, we do not consider arguments made for the first time on appeal in an appellant's reply brief, but we retain the discretion to do so." (quotation omitted)) (unpublished).

We cite these unpublished cases as persuasive under Fed. R. App. P. 32.1(A) and 10th Cir. R. 32.1.

enhancement under § 2K2.1); *see Leib*, 57 F.4th at 1125-27 (reviewing sufficiency of evidence for a § 2K2.1(b)(6)(B) enhancement for clear error).

Section 2K2.1(b)(6)(B) provides for a four-level enhancement to a defendant's offense level "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." This provision therefore has three elements: (1) possession of a firearm, (2) in connection with, and (3) another felony offense. Mr. Stapp has limited his challenge to whether he committed "another felony offense."[6]

For the "felony offense" element of § 2K2.1(b)(6), the district court relied on the Oklahoma crime of unauthorized use of a vehicle, Okla. Stat. tit. 47, § 4-102, which requires proof that the defendant (1) is not entitled to possession of the vehicle without the consent of the owner, (2) intends to deprive the owner of the vehicle, and (3) takes, uses, or drives the vehicle. Mr. Stapp addressed the first two elements in district court but addresses only the first one—without the owner's consent—on appeal.

---

[6] Mr. Stapp does not challenge that he possessed a firearm. Nor does he contest the district court's finding that he possessed it "in connection" with the vehicle offense. Even if he had challenged this finding, the district court did not clearly err. *See United States v. Justice*, 679 F.3d 1251, 1255 (10th Cir. 2012) (reviewing district court's "in connection" finding for clear error).

The "in connection" requirement is met if the firearm "facilitated, or had the potential of facilitating" the felony offense. U.S.S.G. § 2K2.1 cmt. 14(A). Facilitation occurs when having the firearm "embolden[s] the possessor to commit the offense" by giving a "sense of security" while committing the offense, *Justice*, 679 F.3d at 1255, including the offense of possession of a stolen vehicle, *United States v. Sanchez*, 22 F.4th 940, 942 (10th Cir. 2022).

Here, the district court found that Mr. Stapp's firearm possession emboldened him based on Deputy Ruppert's testimony that Mr. Stapp repeatedly tried to reach for the firearm while resisting arrest.

### ii. Proof of a "felony offense"

Mr. Stapp argues the government failed to prove by preponderance of the evidence that he did not have the owner's consent to drive the vehicle—a necessary element of the unauthorized-use offense. *See* Aplt. Reply Br. at 5.[7]

The district court found that Mr. Stapp committed the offense based on (1) Ravine's report to the police that her vehicle was stolen from the casino, and (2) body camera footage of her later stating she had reported the car stolen and that she had not given Mr. Stapp permission to drive it. Mr. Stapp stipulated to this evidence but proffered that Damien had permitted him to drive the car to a nearby motel to retrieve his debit card. At sentencing, Mr. Stapp called the contrasting accounts a "misunderstanding," but never argued that Damien was the owner for purposes of having the owner's consent under Okla. Stat. tit. 47, § 4-102. ROA, Vol. III at 241.[8]

---

[7] On appeal, Mr. Stapp has abandoned the argument he made in his sentencing motion to the district court that Damien's permission negated the "intent to deprive" element of the unauthorized use offense. *See* ROA, Vol. I at 108 ("Mr. Stapp had no intent to deprive the owner of the vehicle. He thought he had permission to use the vehicle."). Instead, he argues the Government offered insufficient evidence to prove he drove the vehicle "without the consent of the owner." Aplt. Reply Br. at 5 (quotations omitted).

[8] For the first time on appeal, Mr. Stapp argues the evidence was insufficient because it did not prove Ravine was the vehicle's *sole* owner. *See* Aplt. Reply Br. at 5-7. He contends that, if Damien co-owned the vehicle and gave him permission to drive the car, Ravine's hearsay statement did not show that Mr. Stapp lacked the owner's consent. *Id.*
But Mr. Stapp never raised this argument in district court, nor did he proffer that Damien co-owned the vehicle. *See* Oral Arg. at 08:00-09:17. Because Mr. Stapp failed to raise this argument in district court and failed to argue plain error on appeal,

Although Mr. Stapp's attempt to reconcile his proffer with the Government's evidence may be plausible, we cannot say the district court clearly erred in finding that Mr. Stapp lacked the owner's permission to take the vehicle from the casino. The Government offered evidence to show Ravine owned the vehicle, that she spoke with Mr. Stapp before he left the casino, and that she did not give him permission to take the vehicle. "[V]iew[ing] the evidence and inferences therefrom in the light most favorable to the district court's determination," *Leib*, 57 F.4th at 1126 (quotation omitted), the district court could reasonably find the Government's evidence more likely than not established that Mr. Stapp took the vehicle without the owner's permission.

## 2. Criminal History

Mr. Stapp also contends his 2005 and 2008 Oklahoma state convictions should not have been used to calculate his criminal history score because *McGirt* rendered them void for lack of jurisdiction. Aplt. Br. at 28-39. Because Mr. Stapp raises this argument for the first time on appeal, we review for plain error. *See United States v. Vannortwick*, 74 F.4th 1278, 1280–81 (10th Cir. 2023). He cannot show any error was plain.

---

he is not entitled to our review. *See United States v. Portillo-Uranga*, 28 F.4th 168, 177 (10th Cir. 2022).

a.  McGirt

In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Supreme Court held that the Muscogee (Creek) Reservation had not been disestablished.  *Id.* at 913, 937-38.  The "Indian Major Crimes Act," 18 U.S.C. § 1153, confers exclusive federal jurisdiction over the prosecution of crimes when (1) the accused is an "Indian," (2) the alleged offense occurred in "Indian country," and (3) the conduct falls under one of the enumerated offenses set forth in § 1153.[9]

Mr. Stapp's 2005 and 2008 convictions were for offenses enumerated in § 1153(a).  Under *McGirt*, they occurred within Indian country—the Muscogee (Creek) Reservation.  The parties agree that Oklahoma courts would not have jurisdiction to prosecute Mr. Stapp for his 2005 and 2008 offenses after *McGirt*. *See* Aplt. Br. at 31-32; Aplee. Br. at 15.  They disagree about whether those offenses should be counted as part of Mr. Stapp's criminal history in this case.

b.  *No plain error*

Mr. Stapp has not shown that any error in calculating his criminal history score using his 2005 and 2008 Oklahoma convictions was plain.  If anything, our case law shows no error.

---

[9] These offenses include:  "murder, manslaughter, kidnapping, maiming, [sexual abuse], incest, a felony assault [within the maritime and territorial jurisdiction of the United States], assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, robbery, and [] felony [theft]."  18 U.S.C. § 1153(a).

Mr. Stapp has identified no authority entitling him to collaterally attack his Oklahoma convictions in a federal sentencing proceeding.[10] The Guidelines "do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." U.S.S.G. § 4A1.2 cmt. n.6. In *United States v. Garcia*, 42 F.3d 573 (10th Cir. 1994), this court said that, "with the exception of a collateral attack based on complete denial of counsel, a district court sentencing a defendant under the . . . Guidelines cannot consider a collateral attack on a prior conviction." *Id.* at 581; *see also Custis*, 511 U.S. at 487, 493 (holding the same for the Armed Career Criminal Act, finding it "lack[ed] any indication that Congress intended to permit collateral attacks on prior convictions used for sentence enhancement purposes.").

Mr. Stapp's attempts to distinguish *Garcia* are unpersuasive.

First, he says the defendant in *Garcia* argued the Guidelines permitted the district court to depart downward based on his claim that he was innocent of the predicate offense for the enhancement. *See* Aplt. Reply Br. at 19 (citing *Garcia*, 42 F.3d at 574-75). But this part of the *Garcia* opinion has nothing to do with the issue presented here. *Compare Garcia*, 42 F.3d at 575-78 ("Claim of Innocence"), *with id.* at 578-82 ("Constitutional Challenge").

---

[10] Courts describe challenges to the use of a prior conviction for sentence enhancement as "collateral attacks" on the conviction. *See Custis v. United States*, 511 U.S. 485, 488 (1994).

17

Second, Mr. Stapp, addressing the portion of *Garcia* dealing with the permissibility of collateral attacks at sentencing, argues we rejected Mr. Garcia's attack on his predicate conviction based on an interpretation of the Sentencing Guidelines. *See* Aplt. Reply Br. at 19. But Mr. Stapp fails to explain how this argument shows error in this case, let alone plain error. *Id.*

Third, Mr. Stapp argues "*Garcia* deserves re-examination." Aplt. Reply Br. at 20, but "[w]e are bound by the precedent of prior panels," *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam).

In sum, Mr. Stapp's arguments are unpersuasive. At a minimum, any error is not plain under well-established law. Mr. Stapp thus fails to satisfy the "plain" prong of plain error review.

## III. CONCLUSION

We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge